**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Joe Newman, | No. CV-13-08005-PCT-JAT |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Show Low Police Department, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion for Summary Judgment (Doc. 76). The Court now rules on the motion.

**I. Background[1]**

On January 27, 2011, Show Low Police Department Officer Steven Williams pulled over Plaintiff Joe Newman because Plaintiff's van had a cracked windshield. (Doc. 77 ¶ 1). After Plaintiff pulled over and while Officer Williams was reporting the traffic stop to police dispatch, Plaintiff opened the driver's door of his van and got out of the vehicle. (Doc. 77 Exs. 1A, 1B). Officer Williams immediately told Plaintiff to return to his van, but Plaintiff instead shouted at Officer Williams, demanding to know the answers to a number of questions concerning the stop. Plaintiff appeared belligerent and aggressively walked toward Officer Williams, eventually stopping between the back of

---

[1] Although Plaintiff did not file a controverting statement of facts, the Court construes Plaintiff's factual arguments contained in his response to Defendants' motion as a controverting statement of facts, and views any disputed facts in the light most favorable to Plaintiff.

Plaintiff's van and the front of Officer Williams' car. Officer Williams repeatedly told Plaintiff to return to his van, but Plaintiff initially did not comply. Instead, Plaintiff continued shouting and gesturing at Officer Williams until Officer Williams drew his Taser and pointed it at Plaintiff. At this point, Plaintiff returned to his van and sat inside. (*Id.*)

Officer Williams called for backup. Officer Cory Fechtelkotter arrived, and the two approached Plaintiff's van, with Officer Williams on the driver's side and Officer Fechtelkotter on the passenger's side. As soon as Officer Williams began speaking with Plaintiff, Plaintiff resumed shouting and began to argue with Officer Williams. Plaintiff handed Officer Williams his insurance information, and Officer Williams asked Plaintiff for his driver's license. Plaintiff continued arguing and shouting during this entire period of time. Officer Williams then told Plaintiff that he was under arrest and ordered Plaintiff to leave his van. Plaintiff refused. Officer Williams again ordered Plaintiff to step out of his van. (*Id.*)

A struggle between the officers and Plaintiff ensued, during which Officer Fechtelkotter threatened to use his Taser on Plaintiff if Plaintiff would not comply. Officer Fechtelkotter fired his Taser but the probes never contacted Plaintiff's body. Officers Williams and Fechtelkotter, along with Sergeant Spear, brought Plaintiff to the ground using a control hold. The officers placed their knees on Plaintiff's legs and back to hold Plaintiff still while they handcuffed him. Once Plaintiff was handcuffed, the officers did not use any force against Plaintiff. The officers then helped Plaintiff to his feet, placed him in a patrol car, and took him to the station. (*Id.*)

Plaintiff was ultimately convicted of resisting arrest. (Doc. 77-1 at 25).

## II. Legal Standard

### A. Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely

disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(A), (B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a *genuine* issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963) (amended 2010)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

### B. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982)). This protection "applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004)). There is a two-step test for resolving a qualified immunity claim: the "constitutional inquiry" and the "qualified immunity inquiry." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The "constitutional inquiry" asks whether, when taken in the light most favorable to the non-moving party, the facts alleged show that the official's conduct violated a constitutional right. *Id.* If so, a court turns to the "qualified immunity inquiry" and asks if the right was clearly established at the relevant time. *Id.* at 201-02. This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* at 201.

Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

### C.   Excessive Force

A claim for excessive force "in the context of an arrest" is analyzed for a Fourth Amendment violation. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. This requires balancing "the extent of the intrusion on the individual's Fourth Amendment rights against the government's interests." *Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010).

The Court of Appeals engages in a three-step analysis to determine if a Fourth Amendment violation has occurred. *See id.* "First, we must assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating 'the type and amount of force inflicted.'" *Id.* (quoting *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003)). "Next, we must evaluate the government's interests by assessing (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the officers' or public's safety; and (3) whether the suspect was resisting arrest or attempting to

escape." *Id.* (citing *Graham*, 490 U.S. at 396). "Third, 'we balance the gravity of the intrusion on the individual against the government's need for that intrusion.'" *Id.* (quoting *Miller*, 340 F.3d at 964).

Because balancing the officers' intrusion on an individual's Fourth Amendment rights against the government's interests "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," the Court of Appeals has "held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002). But "defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994).

### III. Analysis

Plaintiff's sole surviving claim is against Defendants/Officers Williams, Spear, Roby, and Fechtelkotter for section 1983 liability stemming from the use of excessive force in arresting Plaintiff. *See* (Doc. 34 at 5-6). The Court will turn to the first prong of the qualified immunity analysis: whether the facts of Plaintiff's arrest, viewed in the light most favorable to Plaintiff, show that the officers violated Plaintiff's constitutional rights. In other words, the Court must determine whether there exists a genuine issue of material fact as to whether Defendants used excessive force in arresting Plaintiff.

#### A. Plaintiff's Version of the Facts

At the outset, the Court notes that Plaintiff's traffic stop and arrest were recorded on a police dashcam, and Defendants have submitted a copy of this video in support of their motion for summary judgment (Exhibit 1B). The Court has reviewed the video as well as all of the other evidence submitted in connection with Defendant's motion and Plaintiff's opposition to the motion. Plaintiff disputes the veracity of the video and asserts that events unfolded very differently from those depicted in the video. (Doc. 78).

In *Scott v. Harris*, 550 U.S. 372 (2007), the Supreme Court confronted the

situation in which a plaintiff's story of events is contradicted by a videotape whose authenticity cannot reasonably be questioned. There, the court emphasized that the standard for summary judgment requires a *genuine* dispute of material fact: "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott*, 550 U.S. at 380 (quoting *Anderson*, 477 U.S. at 247-48). "When the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* (quoting *Matsushita*, 475 U.S. at 586-87). Thus, the Supreme Court held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

In the present case, no reasonable jury could find the facts surrounding Plaintiff's arrest to be as Plaintiff depicts them. Plaintiff alleges that Officer Fechtelkotter shot Plaintiff with his Taser while Plaintiff was standing and other officers were holding Plaintiff's arms behind his back. (Doc. 28 at 3). Plaintiff also alleges that Officers Spear and Roby drove their knees into Plaintiff's back causing serious injuries, and that these officers also beat him. (*Id.* at 4). The Court's review of the video shows that the quality of the recording is good, the sound quality is good, and there is no evidence of Plaintiff's allegations. The officers place their knees on Plaintiff's back in a manner that although done with the purpose of restraining Plaintiff, is not so forceful such that injury would reasonably be expected.

Plaintiff maintains, as he has since the beginning of his lawsuit, that Defendants have edited the video as part of a conspiracy to protect the officers. (Doc. 78 at 1, 4). Plaintiff fails to cite, however, any evidence that would cause a reasonable jury to believe his wild claims. Fed. R. Civ. P. 56(c)(3). Nor does the video display any signs of editing that would be apparent to a jury, such as abrupt transitions between scenes. Accordingly, the Court concludes that no reasonable jury could believe Plaintiff's version of events.

*See Scott*, 550 U.S. at 380-81.

### B. Qualified Immunity

Under the first prong of the qualified immunity analysis, the issue is whether the officers violated Plaintiff's constitutional rights by using excessive force in arresting Plaintiff. This requires the Court to apply the three-step *Graham* analysis to determine whether the officers' actions were objectively reasonable. The first inquiry is the "type and amount of force inflicted" upon Plaintiff in arresting him. Here, the amount of force used was slight. The officers pulled Plaintiff out of his car, grappled with him as he resisted, and took him to the ground to handcuff him. Although Officer Fechtelkotter drew his Taser and fired at Plaintiff, the probes missed Plaintiff and therefore, under the particular circumstances of this case, the use of the Taser ultimately did not inflict any force upon Plaintiff. Thus, the force inflicted upon Plaintiff was a minor intrusion upon his Fourth Amendment interests.

On the other hand, the other three *Graham* factors weigh in favor of the officers. At the time that the officers informed Plaintiff that he was under arrest, Plaintiff's crime was failure to comply with a police officer. Plaintiff's aggressive posturing and erratic behavior posed an immediate threat to the officers' safety because a reasonable officer would believe that an aggressive individual is more likely to assault an officer and because a reasonable officer would also believe that a non-compliant individual is more likely to assault an officer. Plaintiff resisted his arrest and therefore the officers had no choice but to use some level of force to arrest Plaintiff.

Finally, balancing the gravity of the force inflicted upon Plaintiff against the officers' need to inflict that force, a reasonable jury could conclude only that the officers' use of force against Plaintiff was objectively reasonable under the circumstances. From the video it is apparent that the officers used the minimum level of force necessary to arrest Plaintiff, and the minor restraints placed upon Plaintiff (including holding him down while the handcuffs were applied) were necessary to arrest a non-compliant, aggressive individual. The officers did not violate Plaintiff's Fourth Amendment rights

when they arrested Plaintiff.

Plaintiff makes a number of vague statements in his response to Defendants' motion as well as in his improperly filed surreply.[2] *See* (Doc. 78; Doc. 82). In a nutshell, Plaintiff attacks the veracity of the video of his arrest and attempts to explain his state of mind during the arrest. For example, Plaintiff states that he had serious concerns about his personal safety and that he complied with Officer Wiliams' commands when he got back inside his van. (Doc. 78 at 2). Plaintiff also accuses Officer Williams of having a "controlling and abusive character," (*id.*), and so forth. Although Plaintiff offers numerous interpretations for his actions as well as unsupported allegations of an edited video, Plaintiff offers nothing that creates a genuine dispute of material fact as to the circumstances surrounding Plaintiff's arrest.

Accordingly, because the officers used an objectively reasonable level of force in arresting Plaintiff, Plaintiff's section 1983 claim fails as a matter of law.

**IV. Conclusion**

For the foregoing reasons,

**IT IS ORDERED** granting Defendants' Motion for Summary Judgment (Doc. 76).

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment for Defendants and terminate this case.

Dated this 20th day of May, 2015.

James A. Teilborg
Senior United States District Judge

---

[2] The Court notes that Plaintiff has also improperly filed two additional documents containing argument on this motion. *See* (Docs. 86 & 88). Although the Court could strike these documents as procedurally improper, the Court has nonetheless reviewed all of the arguments presented therein and finds none of them to be meritorious.